**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,                 Case No. 25-cr-20029
                                    Hon. Jonathan J.C. Grey
v.

VARSALLES PHILLIPS,

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S THIRD MOTION TO SUPPRESS (ECF No. 68) AND DENYING DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS (ECF No. 92)

Defendant Varsalles Phillips has filed a third motion to suppress.[1]

(ECF No. 68.) On January 9, 2026, the Court granted in part and denied

in part the government's motion to strike Phillips' third motion to

suppress. (ECF No. 76.) As narrowed by the Court's January 9 order,

Phillips moves to suppress: (1) a firearm found in the downstairs rental

---

[1] While Phillips refers to this motion as his second motion to suppress, it is his third. (*See* ECF Nos. 19, 46, 68.)

unit (ECF No. 68, PageID.504),[2] and (2) the evidence obtained from the alleged search of his phone on January 14, 2025. (*Id.* at PageID.505.)

The motion is fully briefed. (ECF Nos. 78, 85.) On February 5, 2026, Phillips also filed a supplemental motion and brief in support of motion to suppress evidence (ECF No. 92), which the Court addresses.

The Court finds that oral argument will not aid in its disposition of the motion; therefore, it dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons below, the Court **DENIES** Phillips' motion to suppress (ECF No. 68), **DENIES** his request for an evidentiary hearing (*see* ECF No. 85), and **DENIES** his supplemental motion (ECF No. 92).

## I.   BACKGROUND

On January 23, 2025, a grand jury indicted Phillips on one count of felon in possession of a firearm. (ECF No. 10.) On May 6, 2025, a grand jury issued a superseding indictment adding two counts of sex trafficking of children. (ECF No. 32.) The Court provides its recitation of the facts to

---

[2] It is unclear if Phillips also seeks to suppress other evidence obtained as a result of his arrest. He only states that "[h]e challenges the search of the specific upstairs unit where he resided and was seized." (ECF No. 68, PageID.500.) But it is unclear what *fruits* of the upstairs search, if any, he seeks to suppress, and he does not elaborate in the argument section of his brief.

the two issues that survived the Court's January 9 order: (1) whether the search of 15111 Steel Street was overbroad (the "*Garrison* issue"), and (2) whether the warrantless search of Phillips' phone was unlawful under *Riley v. California*, 573 U.S. 373 (2014) (the "*Riley* issue").

### A. Search of 15111 Steel Street

On January 14, 2025, a state court judge issued a warrant to search 15111 Steel St., Detroit, MI after federal agents tracked a missing 15-year-old victim of sex trafficking ("MV-1") to that address. (ECF No. 1, PageID.3; ECF No. 23-2.) The warrant authorized the search of the residence for the minor victim, electronic communication devices, cameras and/or DVR systems or any devices capable of cloud storage, proof of occupancy and/or residency, and evidence of human trafficking.[3] (ECF No. 23-2.) The government alleges that law enforcement tracked phone pings associated with the victim to confirm MV-1's presence at the

---

[3] The last word is redacted on the search warrant (ECF No. 23-2, PageID.116), but the government alleges it states evidence of human trafficking. Phillips does not dispute this point.

Steel Street residence before executing the search warrant. (ECF No. 78, PageID.643.)

Agents executed the warrant on the evening of January 14, 2025. They knocked and announced their presence before entering. (Agent Szczygiel BWC, 5:20–5:44.)[4] MV-1 came to the doorway, and the agents handcuffed her and took her to a squad car.[5] (*Id.* at 6:25–7:07.) Agents then entered the house to conduct a safety sweep and search the residence. (*Id.* at 7:15.)

Body camera ("bodycam") footage shows agents moving through the house. Agents entered the front door into an empty living room, with stairs to the right of the front door. (*Id.* at 7:15–7:37.) The living room opened to a smaller room, which was also barely furnished. (*Id.* at 7:37–7:46.) That room opened up to a kitchen (*id.* at 7:47) and a hallway with a bedroom on the left. (*Id.* at 7:47–8:25.) Bodycam footage clearly shows

---

[4] Pursuant to the Court's previous order (ECF No. 81), the government submitted the body camera footage referenced in this opinion—Exhibits D and G of their response to Phillips' motion to suppress—using the electronic portal.

[5] *The Court notes that MV-1 was handcuffed in the doorway, **while wearing loungewear that exposed large portions of her skin**, and escorted outside over snow-covered steps and concrete path, **without a coat, hat, scarf, blanket,** or **shoes.** The Court wonders if every alleged missing child/human trafficking victim, as MV-1 is alleged to be, receives the same treatment from the participating law enforcement officers here. The Court requires that the government pose the same query to every participating law enforcement officer in this case.*

that the first-floor bedroom door was completely open when agents encountered it. (*Id.* at 8:25–8:34.) The agents then entered the bedroom and found a firearm under the mattress. (*Id.* at 9:02–9:23.)

After they searched the first floor, some agents went to the basement while other agents went to the second floor. (Agent Hughes BWC, 8:23–8:46.) Phillips contends that the upstairs area was separated by a door with a dedicated lock. (ECF No. 68, PageID.502.) The bodycam footage does show a door at the top of the stairs, but the footage shows that the door was open when agents arrived on the stairs and entered. (Agent Hughes BWC, 8:46–8:47.) Agents searched the upstairs, found Phillips hiding in the attic, and arrested him. (*Id.* at 8:47–11:10.)

**B. Search of Phillips' Phone**

After Phillips' arrest, agents seized a cell phone found on his person. (ECF No. 68, PageID.503; ECF No. 78, PageID.647.) MV-1 provided agents with the passcode to Phillips' phone that same night, January 14, 2025. (*Id.*) Phillips alleges that the agents accessed the phone upon receipt of the passcode. (ECF No. 68, PageID.503.) The government avers that the agents do not recall typing the passcode into Phillips' phone to

5

confirm that it was correct,[6] but even if they did, the agents did not search Phillips' phone or access anything on the phone in any way that night. (ECF No. 78, PageID.647.)

The phone remained in FBI custody until two days later, at which point a warrant to search the phone was obtained. (ECF No. 68, PageID.503; ECF No. 78, PageID.648.) On January 16, 2025, agents conducted a federal extraction of the phone pursuant to the warrant. (ECF No. 78-2.)

## II.   LEGAL STANDARD

### A. Exclusionary Rule

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "[T]he principal judicial remedy to deter Fourth Amendment violations" is "[t]he exclusionary rule—the rule that often requires trial courts to exclude unlawfully seized evidence in a criminal trial." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (citation omitted).

---

[6] The agents acknowledged, however, that they have done so in the past in other investigations. (ECF No. 78, PageID.647.)

"The exclusionary rule generally bars the admissibility at trial of tangible evidence . . . acquired through unconstitutional means." *United States v. Akridge*, 346 F.3d 618, 623 (6th Cir. 2003) (citing *Wong Sun v. United States*, 371 U.S. 471, 485 (1963)). "Under the [Supreme] Court's precedents, the exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" *Strieff*, 579 U.S. at 237 (citation omitted). The defendant bears the burden of proving a Fourth Amendment violation when moving to suppress evidence. *United States v. Evers*, 669 F.3d 645, 651 (6th Cir. 2012); *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014).

### B. Evidentiary Hearing

"A litigant is not always entitled to an evidentiary hearing, especially when the moving party presents arguments that are 'entirely legal in nature.'" *United States v. Lawson*, 476 F. App'x 644, 648 (6th Cir. 2012) (citation omitted). "'[A] defendant must make at least some initial showing of contested facts to be entitled to such a hearing.'" *Id.* (citations omitted). Courts should grant evidentiary hearings on motions to

7

suppress "'when the defendant alleges sufficient facts which if proven would justify relief.'" *United States v. McGhee*, 161 F. App'x 441, 444 (6th Cir. 2005) (citation omitted).

## III.   ANALYSIS

### A. The *Garrison* Issue

Phillips argues that "federal agents violate[d] the Fourth Amendment by executing a single-family premises warrant at 15111 Steel Street after discovering—upon entry—that the residence was physically partitioned . . . thereby rendering the continued search overbroad[.]" (ECF No. 68, PageID.498.) To establish that the residence was physically partitioned, Phillips points to: (1) a padlocked first-floor bedroom[7] that he claims was rented by a third party, and (2) a locked second-floor apartment. (*Id.*) He alleges that "[i]nstead of stopping to obtain a specific warrant" after discovering that the home was a rooming house with padlocked separate units, the agents "smashed the locks." (*Id.* at 500–501.) The government responds that, "[c]ontrary to Phillips' inaccurate assertions, there is no evidence that would lead a reasonable

---

[7] The photograph Phillips submits of the first-floor bedroom door shows an external hasp but no padlock. (ECF No. 68-5.)

officer to believe that the first floor, including the first-floor bedroom, was a unit that was separate from the remainder of the house such that it was not encompassed by the warrant." (ECF No. 78, PageID.650.) The Court agrees with the government.

A warrant for a particular premises does not authorize the search of separate and distinct living quarters. *See Maryland v. Garrison*, 480 U.S. 79, 86–87 (1987) ("If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor . . . they would have been obligated to limit their search to McWebb's apartment."). "'The test to be applied in this situation . . . is whether [the officers] should have known that the building was not a one-family home.'" *United States v. Votteller*, 544 F.2d 1355, 1364 (6th Cir. 1976) (citation omitted). "In such cases the presence or absence of external indicia may be considered e.g. dual mail boxes, doorbells, utility meters, assigned street addresses of independent residences, etc." *Id.*

*Maryland v. Garrison*, on which Phillips primarily relies, is illustrative and merits discussion. In *Garrison*, police officers obtained and executed a search warrant for "the person of Lawrence McWebb and

'the premises known as 2036 Park Avenue third floor apartment.'" 480

U.S. at 80. The third floor was divided into two apartments—one

occupied by McWebb and one by Respondent Garrison—but when the

officers applied for the warrant and conducted the search, they

reasonably believed there was only one apartment on the premises. *Id.*

When officers executed the search warrant and entered the

vestibule on the third floor, the officers "could see into the interior of both

McWebb's apartment to the left and respondent's to the right, for the

doors to both were open." *Id.* at 81. Only after Garrison's apartment had

been entered and contraband found did the officers realize that the third

floor had two apartments. *Id.* As soon as they realized there were two

distinct apartments, they discontinued the search; but up until that

point, the officers reasonably believed they were searching McWebb's

apartment. *Id.*

Garrison moved to suppress the contraband found in his apartment.

*Id.* at 80. In relevant part, the Supreme Court considered "whether the

*execution* of the warrant violated [Garrison's] constitutional right to be

10

secure in his home."[8] *Id.* at 86 (emphasis added). The Supreme Court held that "the validity of the search of [Garrison's] apartment pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Id.* at 88. The Supreme Court found that "it unquestionably was" where "[t]he objective facts available to the officers at the time [of the search] suggested no distinction between McWebb's apartment and the third-floor premises," and McWebb never said otherwise. *Id.*

Relying on *Garrison*, Phillips seeks to suppress the firearm found in the first-floor bedroom, arguing that he "cannot be in constructive possession of items in a padlocked room he could not access." (ECF No. 68, PageID.504.) Whether or not Phillips had constructive possession of the gun is a matter for trial. The question before the Court on the motion to suppress is whether the officers should have known, upon entry and

---

[8] In addition to evaluating the reasonableness of the manner in which the search warrant was executed, the Supreme Court in *Garrison* considered another distinct constitutional issue: the validity of the warrant itself. 480 U.S. at 84–85. Under the *Garrison* issue, Phillips does not challenge the validity of the warrant but rather argues that the search was overbroad because agents ignored physical proof of separate living units. (ECF No. 68, PageID.503–504.) Thus, this Court focuses its analysis on the manner in which the search warrant was executed.

at the time of the search, that the first-floor bedroom was a separate and distinct living quarters that was rented by a third party.

Here, the search warrant was for "[t]he premises, curtilage, sheds, outhouses, garbage/dumpster cans, doghouses, garages, any safes and locked storage containers inside the location and any vehicles associated with the premises[.]" (ECF No. 23-2, PageID.115.) Like the Supreme Court in *Garrison,* the Court looks to the plain language of the warrant and finds that it "indicates that it was intended to authorize a search of" the entire premises. 480 U.S. at 82. Moreover, there was no evidence presented of any visible indication from the exterior of the house that there were separate living quarters inside. Thus, before entry, there was no indication that the house consisted of separate living units.

Then, once the agents entered, there was an absence of indicia that the first-floor bedroom and second floor were separate and distinct living quarters. As was the case in *Garrison,* the door to the first-floor bedroom was open such that the officers could see into the interior. *See* 480 U.S. at 81. As the government states, and as depicted on the bodycam footage, the house was scantily furnished and most of the doors to the rooms on the first floor were open, including the bedroom door. Contrary to

Phillips' assertions, agents did not breach a padlock, as evidenced by the bodycam footage which shows officers approaching an *open* bedroom door. *See Cunningham v. Shelby Cnty., Tenn.*, 994 F.3d 761, 763 (6th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380–381 (2007); citing *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015)) ("When videotape footage exists, the reviewing court need not credit the version of a party who asserts facts 'blatantly contradicted' by the videotape[.]"). Other than the fact that there was a padlock on the door, nothing else indicates that the bedroom was a separate living quarter from the rest of the house. Similarly, the door leading from the stairs to the second floor was open, as evidenced in the bodycam footage.[9] The photographs that Phillips relies on do not establish otherwise. (ECF No. 68-5 (photograph depicting open first-floor bedroom door with external hasp and lock); ECF No. 68-8 (photograph depicting open door with lock separates first and second floors).)

---

[9] Even if the door leading to the second floor was closed, Phillips cites no authority to support his proposition that a locked interior door *alone* is sufficient to signal to a reasonable officer that the upstairs and downstairs were separate living quarters. *But see United States v. Jackson*, 508 F. Supp. 2d 422, 429–430 (M.D. Pa. 2007) (finding that despite defendant's locked bedroom door, nothing signaled to the officers executing the search warrant that the room constituted a separate dwelling unit).

Moreover, Phillips does not cite, and the Court is not aware of, any case law to establish that a reasonable officer should have known that a room was a distinct living quarter *based solely* on an external hasp and lock on an *open* door, or any type of lock on an open door. *Cf. United States v. Shamaeizadeh*, 80 F.3d 1131, 1138–1139 (6th Cir. 1996) (officers should have known that a basement apartment was a separate residence not covered under the warrant where "[t]he officers had previously discovered that the door connecting the upper floor and basement floor was locked," an officer "noticed that the apartment had its own den and refrigerator," and a resident of the home "had informed the officers that her access to the basement apartment was restricted"). *See also United States v. Sibert*, No. 4:15-cr-18-TRM-SKL, 2016 WL 11432144, at **6–7 (E.D. Tenn. Aug. 10, 2016), *report and recommendation adopted,* No. 4:15-cr-18, 2016 WL 4996338 (E.D. Tenn. Sept. 19, 2016) (distinguishing the case from others where courts have determined officers should have known a structure contained multiple dwelling units because "[a]lthough Defendant points to the existence of a keyed lock on his bedroom door as evidence of separate dwellings, it is undisputed that the door to Defendant's bedroom was open and unlocked at the time the police made

14

their initial entry"); *United States v. Aguirre-Arreguin*, No. CR.A. 5:07-37-JMH, 2007 WL 1520923, at *3 (E.D. Ky. May 23, 2007) ("In the absence of more concrete evidence of a separate apartment—e.g., a doorbell, a separate number on the defendant's door, or a mailbox—the Court is not prepared to say the officers executing the search warrant should have known the upstairs unit was in fact a separate living space."); *United States v. Pule*, No. 4:11-cr-37, 2012 WL 6760630, at **6–7 (E.D. Tenn. July 5, 2012), *report and recommendation adopted,* No. 4:11-cr-37, 2013 WL 30219 (E.D. Tenn. Jan. 2, 2013) (finding that defendant, who alleged that he maintained his bedroom as a separate dwelling unit, did not meet his burden in part where there was no evidence to indicate the defendant's bedroom door was locked, or even closed, at the time of the search).

The other cases Phillips cites are also distinguishable. In *United States v. Votteller*, 544 F.2d 1355, 1362 (6th Cir. 1976), the appellant moved to suppress evidence that was obtained by the execution of a search warrant to search the premises at "57 Euclid Avenue," which was a multi-use building consisting of three floors with apartments on the second and third floors and the basement, and a bar on the first floor.

The Sixth Circuit held that the search warrant was illegal because it was not sufficiently specific as to the portion of the building to be searched. *Id.* at 1364. The court noted that the agents could have checked with the phone company for the location of the phone number which they alleged in the search warrant to narrow down the location of the search. *Id.*

Unlike the appellant in *Votteller*, Phillips is not challenging the search warrant itself.[10] Importantly, it was not obvious here by external indicia that the house consisted of separate living quarters. This is not a case like *Votteller* where there are three floors of apartment units and a bar such that the officers would have, or should have, been on notice that the apartments were separate units. The Steel Street address objectively appears to be a single-family home, and aside from the internal locks, Phillips offers no other evidence that would put a reasonable officer on notice during the search that there were distinct living quarters inside.[11]

---

[10] Phillips did initially challenge the validity of the warrant, i.e., the *Franks* issue, but the Court does not consider that issue here for the reasons already stated at ECF No. 76.

[11] Phillips' reliance on MV-1's statement that she rented the downstairs of his house (ECF No. 68-7, PageID.532 (stating that Phillips "let MV-1 rent the downstairs of his house")) is also unavailing. As the government notes, MV-1 made this statement during a forensic interview on January 28, 2025—two weeks after the search of 15111 Steel Street. Therefore, MV-1's statement does not support Phillips' position that, *at the time the search was executed*, a reasonable agent would have believed that the downstairs and upstairs areas were separate living units.

Similarly, *Ramirez v. Webb*, 835 F.2d 1153 (6th Cir. 1987) is inapposite. The question before the Sixth Circuit in *Ramirez* was whether the warrant was valid—not whether the search warrant was executed in a reasonable manner, as is the case here. Thus, *Ramirez* does not support Phillips' *Garrison* argument.

Lastly, Phillips asks for, at minimum, the complete body-worn camera footage capturing the initial entry into the residence, initial approach to and entry into the first-floor bedroom area, and any approach to or entry through the second-floor interior door, but the government has produced just that. (ECF No. 85, PageID.711.) More importantly, the bodycam footage produced undisputedly shows that: (1) the door to the first-floor bedroom, and most other rooms downstairs, were open at the time of the search, (2) the agents did not smash any locks in that area, and (3) the second-floor interior door was open when first encountered. Thus, an evidentiary hearing is unnecessary.

For these reasons, Phillips has not met his burden of production or persuasion to suppress evidence obtained during the search of 15111 Steel Street because he has not sufficiently shown that a reasonable officer would believe the search was executed beyond the scope of the

17

warrant. Accordingly, Phillips' motion to suppress is **DENIED** as to the *Garrison* issue.

### B. The *Riley* Issue

In his motion to suppress, Phillips also argues that "agents accessed the phone on Jan[uary] 14 but did not get a warrant until Jan[uary] 16," violating *Riley v. California*, 573 U.S. 373 (2014). (ECF No. 68, PageID.505.) Specifically, Phillips alleges that agents seized Phillips' phone, obtained the passcode from MV-1, and accessed the phone without a warrant. (*Id.* at PageID.503.) The government responds that: (1) typing in the passcode does not constitute a search; (2) even if it did, agents did not obtain the phone contents pursuant to that search; and (3) even if the Court determines that an unlawful search occurred that resulted in a discovery of the phone contents, the evidence is still admissible under the independent source and inevitable discovery doctrines. (ECF No. 78, PageID.653.) The Court does not decide whether typing in the passcode constitutes a search but agrees with the government's second and third arguments. The Court also finds that Phillips' recently filed supplemental motion does not alter the Court's conclusion. (ECF No. 92.)

18

### 1. Entering the passcode

In *Riley*, the Supreme Court held that "officers must generally secure a warrant before conducting" a search of cell phone data. 573 U.S. at 386. However, this case presents a unique issue: whether merely entering a passcode of a locked phone constitutes an unlawful search.

There is no clear answer to this question where case law supports Phillips' and the government's positions. *Compare United States v. Jackson*, No. 21-CR-51 (DWF/TNL), 2021 WL 5819929, at **8–9 (D. Minn. Aug. 25, 2021), *report and recommendation adopted,* No. CR 21-051 (DWF/TNL), 2021 WL 4892223 (D. Minn. Oct. 20, 2021) ("Defendant has not articulated how the mere entry of the supplied passcode into his cell phone constituted a search within the meaning of the Fourth Amendment."), *with United States v. Hearst*, No. 1:18-CR-054-RWS-AJB, 2022 WL 16832834, at **22–23  (N.D. Ga. Mar. 10, 2022), *report and recommendation adopted,* No. 1:18-CR-54-RWS, 2022 WL 8163946 (N.D. Ga. Oct. 14, 2022) ("The Court concludes that . . . using a passcode to open a phone constitutes a search since it is a physical trespass into what otherwise would be private content on the phone.").

As the government notes, however, at least one court has held that

19

entering a passcode constitutes a search by analogizing the use of a phone passcode to the insertion of a key into a door lock or the use of a key fob to unlock a door. *See Hearst*, 2022 WL 16832834, at \*22. The Sixth Circuit has explicitly recognized that "the mere insertion of a key into a lock, by an officer who lawfully possesses the key and is in a location where he has a right to be, to determine whether the key operates the lock, is not a search." *United States v. Salgado*, 250 F.3d 438, 456 (6th Cir. 2001).

Regardless, the Court refrains from deciding whether entering a passcode of a locked phone constitutes an unlawful search because, even if it does, ***Phillips has not identified any evidence to be suppressed from the alleged pre-warrant search on January 14.***

### 2. No fruits to suppress

The government argues that even if unlocking Phillips' phone constituted a search, there are no fruits to suppress because the agents did not search the digital contents of the phone or obtain any evidence after checking if the passcode unlocked the phone. (ECF No. 78, PageID.654.) The Court agrees with the government. *See Hearst*, 2022 WL 16832834, at \*23 ("Nonetheless, [the defendant] is not entitled to any relief for this warrantless intrusion, because [the agent] obtained no

20

information from his actions other than confirmation that the cell phone was capable of being unlocked with this passcode.").

Phillips does not respond to the government's contention that there are no fruits from the January 14 alleged search, nor does he identify evidence specifically obtained from that alleged search. Phillips only poses hypotheticals that agents *could have* used the passcode to access, preview, or manipulate the phone before the warrant was issued. (ECF No. 85, PageID.713.) However, Phillips cannot meet his "burdens of production and persuasion in seeking suppression" through "mere conjecture." *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998).

Moreover, Phillips asks for forensic access logs/extraction timestamps, chain-of-custody records, and the relevant bodycam audio/footage around the time the passcode was sought and recorded to determine "what agents did and did not do with a device in their sole custody for nearly two days." (ECF No. 85, PageID.713.) The Court interprets this as a discovery request styled as a motion to suppress.. A motion to suppress is not the appropriate vehicle for further discovery. *See United States v. Schwartz*, No. 19-20451, 2021 WL 3909807, at *4 n.2 (E.D. Mich. Sept. 1, 2021) ("A motion to suppress is not meant to be a

backdoor to discovery that a defendant previously failed to obtain[.]")

Accordingly, the Court finds that Phillips has not identified any fruits of the challenged January 14 search to suppress.

### 3. Independent source and inevitable discovery doctrines

Lastly, the Court finds that, even if entering the passcode into the phone constituted a search and Phillips seeks to suppress fruits of that search, the inevitable discovery doctrine applies such that suppression is unwarranted.

The independent source and inevitable discovery doctrines are two exceptions to the exclusionary rule and involve "the causal relationship between the unconstitutional act and the discovery of evidence." *Strieff*, 579 U.S. at 238. "[T]he independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source." *Id.* (citing *Murray v. United States*, 487 U.S. 533, 537 (1988)). "[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Id.* (citing *Nix v. Williams*, 467 U.S. 431, 434–444 (1984)). For the inevitable discovery exception to apply, the government must "establish by a preponderance

of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix*, 467 U.S. at 444. Since the inevitable discovery exception applies here, the Court need not determine whether the independent source doctrine also applies.

The Sixth Circuit applies the inevitable discovery doctrine "where officers follow a potentially illegal search with a valid, warrant-supported search." *United States v. Witherspoon*, 467 F. App'x 486, 490–491 (6th Cir. 2012) (collecting cases); *see also United States v. Bowden*, 240 F. App'x 56, 61 (6th Cir. 2007) ("The Supreme Court and our circuit have applied the [inevitable discovery] doctrine in several cases where, like this one, a potentially illegal search was followed by a search conducted in accordance with a valid search warrant premised on evidence of probable cause developed independently of the initial search."). That is precisely what occurred here. Phillips' cell phone contents were searched pursuant to a warrant issued on January 16, 2025. (*See* ECF No. 83; ECF No. 78-2.) Phillips does not dispute that a search warrant for the phone was issued or that his phone was subsequently searched pursuant to that warrant.

To the extent Phillips challenges the validity of the January 16

warrant, that argument is unavailing. Critically, nothing in the warrant application mentions that officers *unlocked* the phone with the passcode or otherwise indicates that officers relied on unlawfully obtained information from the alleged January 14 search to establish probable cause in the affidavit. (*See* ECF No. 83.) The affidavit attached to the warrant application only states that MV-1 provided Phillips' passcode to agents. (*Id.* at PageID.685.) Phillips does not explain how that fact alone is sufficient to taint the warrant or how the magistrate judge relied on this fact as probable cause to issue the warrant. Nor does Phillips identify any other information in the search warrant application that was unlawfully obtained. Therefore, even if the agent unlocked the phone with the passcode and obtained information, the search of the phone pursuant to the January 16 warrant was not tainted.

Phillips also requests an evidentiary hearing on this issue, but he has not met his burden. He argues that the application of the independent source and inevitable discovery exceptions requires an evidentiary hearing to determine "what happened first; what information was known when; what prompted the warrant application; what was relied upon." (ECF No. 85, PageID.713–714.) However, the affidavit

24

attached to the warrant application lays out that exact information. (ECF No. 83.) And without making some initial showing of contested facts in connection with the warrant application or identifying specific evidence in the affidavit that was unlawfully obtained, he is not entitled to an evidentiary hearing, *see Lawson*, 476 F. App'x at 648, and cannot use one as a fishing expedition.

Since the inevitable discovery exception to the exclusionary rule applies, Phillips' motion to suppress as to the *Riley* issue fails.

> 4. *Phillips' supplemental motion and brief in support of motion to suppress evidence obtained in violation of the Fourth and Fifth Amendments (ECF No. 92)*

On the evening of February 5, 2026, Phillips filed a supplemental motion and brief in support of motion to suppress evidence obtained in violation of the Fourth and Fifth Amendments ("supplemental motion"). (ECF No. 92.)

As an initial matter, the Court has reason to strike Phillips' supplemental motion and brief. Phillips did not seek concurrence from the government before filing the supplemental motion and otherwise failed to comply with the requirements of E.D. Mich. LR 7.1(a). Nor did Phillips seek leave of Court before filing an additional motion and brief.

*See* E.D. Mich. LR 7.1(d)(1)(A) ("Unless the Court permits otherwise, each motion and response to a motion must be accompanied by a single brief.").

The authority on which Phillips relies to file the supplemental motion is Fed. R. Crim. P. 12(c), which authorizes a court to consider an untimely motion "if the party shows good cause." Phillips argues good cause exists because the supplemental motion addresses alleged constitutional violations "that came to light after Defendant's original motion to suppress was filed." (ECF No. 92, PageID.780.) Specifically, Phillips maintains that he only recently obtained enhanced or alternative viewing of audio recordings from the January 14, 2025 alleged interrogation of Phillips because the original audio quality made significant portions inaudible or fragmented. (*Id.* at PageID.783.) However, the Court cannot find that good cause exists without knowing *when* Phillips first received the original recording and *when* Phillips sought enhancement of the recording. Phillips fails to provide this determinative information.

However, even if the Court considers the supplemental motion on the merits, it does not alter the Court's ultimate conclusion in this

26

opinion. Therefore, the Court **DENIES** the supplemental motion to suppress. (ECF No. 92.)

Phillips first argues that agents falsely claimed to have warrant authority to search his phone, thus rendering any resulting "consent" involuntary. (ECF No. 92, PageID.786–789; *see also* ECF No. 92-1, PageID.803.) Fatal to Phillips' argument, however, is that Phillips did not provide consent—involuntary or otherwise—nor does he identify any involuntary statement for the Court to suppress. (*See* ECF No. 92-1, PageID.804 ("**Agent:** It's a simple question . . . are will [sic] willing to give us a pass code? **Phillips:** Absolutely not. **Agent:** Absolutely, not. Perfect . . . Well, for that, you get the phone back quicker.").)

If Phillips is arguing that the agents obtained the passcode through his involuntary consent, that argument fails. The agents obtained the passcode to the phone from *MV-1*, not Phillips.[12] Moreover, the government never claimed to rely on Phillips' consent as its authority to search the phone. Therefore, this new argument does not change the

---

[12] Phillips again argues that the January 16 warrant to search the phone was tainted. Specifically, in the supplemental motion, he argues that "[t]he subsequent warrant was tainted by information obtained through the coerced consent and cannot serve as an independent source." (ECF No. 92, PageID.788.) For the same reasons discussed above, *see supra* Section III.B.3., the Court finds that the warrant was not tainted, and the inevitable discovery exception applies.

27

Court's analysis or conclusion.

Similarly, Phillips also argues that the agents violated his Fifth Amendment rights by continuing interrogation after he invoked his right to silence. (ECF No. 92, PageID.793–796.) However, Phillips does not identify any statements that were obtained as a result of this alleged violation—again, the passcode was obtained from MV-1, not Phillips. Thus, there is no identified statement for the Court to suppress. Moreover, as explained above, the warrant application was not premised on any unlawfully obtained information.

Finally, Phillips maintains that the warrant authority for searching Phillips' phone was invalid because a search warrant for the residence does not extend to his phone. (ECF No. 92, PageID.789–791.) He further argues that law enforcement officers unlawfully seized the phone by threatening Phillips with indefinite deprivation of the phone if he refused to provide the passcode. (*Id.* at PageID.791–792.) Phillips also asserts that the alleged warrantless search does not fall within any exception to the warrant requirement. (*Id.* at PageID.792–793.)

Phillips appears to argue that the January 14 *search* was unlawful, but the Court has already determined for the reasons stated above that

28

the inevitable discovery doctrine applies. Thus, even if evidence was unlawfully obtained, the Court's conclusion does not change based on this new argument.

The Court also construes Phillips brief as asserting that the January 14 *seizure* of his phone was unlawful, but the Court finds that the phone was seized incident to arrest. Importantly, Phillips does not challenge the legality of his arrest. In arguing that the search-incident-to-arrest exception to a warrantless search does not apply here, Phillips conflates search and seizure. (*See* ECF No. 92, PageID.792 ("While officers may search an arrestee's person incident to a lawful arrest . . . this exception does not extend to searches of cell phone data.").). Courts have repeatedly approved the warrantless *seizures* of cell phones incident to a lawful arrest. *See United States v. Gholston*, 993 F. Supp. 2d 704, 710 (E.D. Mich. 2014) (collecting cases). In fact, in *Riley*, which Phillips cites, the phone was found in the defendant's pocket and seized incident to the arrest, as done here. 573 U.S. at 379. *Riley* only stands for the proposition that officers could not search the digital contents of the cell phone incident to arrest without a warrant, not that they could not seize the phone incident to arrest without a warrant. *See* 573 U.S. at 401

(emphasis added) ("Our holding, of course, is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, *even when a cell phone is seized incident to arrest*.").

Therefore, the Court **DENIES** Phillips' supplemental motion.

## IV. CONCLUSION

Accordingly, for the reasons above, the Court finds that Phillips is not entitled to an evidentiary hearing and **DENIES** Phillips' third motion to suppress (ECF No. 68).

**IT IS FURTHER ORDERED** that Phillips' supplemental motion (ECF No. 92) is **DENIED**.

**SO ORDERED.**

Dated: February 8, 2026                     **s/Jonathan J.C. Grey**
                                            Jonathan J.C. Grey
                                            United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 8, 2026.

s/ **S. Osorio**
Sandra Osorio
Case Manager